MARJORIE P. HOEY *vs.* THE INVESTORS' MORTGAGE & GUARANTY COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Submitted on briefs February 8th—decided March 6th, 1934.

*Nehemiah Candee,* for the appellant (plaintiff).

*Edward J. McCarthy,* for the appellee (defendant).

HINMAN, J.   The complaint alleged circumstances pertaining to the rendition of a judgment of foreclosure obtained by the present defendant against the

plaintiff on April 22d, 1932, and facts subsequent thereto, upon which it was claimed, by the prayers for relief, that the judgment be set aside, the certificate of foreclosure be canceled and title to the mortgaged premises be revested in plaintiff subject to existing mortgages; also that the defendant be enjoined from conveying, transferring or mortgaging the premises and from commencing any proceeding to compel the plaintiff to vacate the premises; other legal or equitable relief, and damages. A temporary injunction was issued pursuant to the prayers therefor, *Quinlan, J.,* but on the subsequent trial on the merits the issues were found for the defendant and judgment was rendered dissolving the injunction.

The finding made by the trial court includes the following facts: On March 21st, 1932, the plaintiff was the owner of the equity of premises, described in the complaint, consisting of about twenty-six acres of land with a dwelling-house, a five-car garage and other buildings thereon, in which the plaintiff and her husband, Matthew P. Hoey, invested about $54,000. The premises now have a market value of $35,600. They were subject to a first mortgage of $18,000 in favor of a bank and a second mortgage of $5000 dated September 9th, 1930, in favor of the defendant, but reduced to $3740, with interest from June 9th, 1931.

On March 24th, 1932, the defendant commenced a foreclosure of the second mortgage, service of process was made at the plaintiff's usual place of abode, and the complaint came into the hands of the plaintiff's husband, who acted for her in all negotiations pertaining thereto. Prior to service of this process, the defendant company, through R. E. Sprague, its then vice-president, had negotiations with Hoey with reference to the payment of an instalment of $420 due on the second mortgage note and Hoey turned over as addi-

tional security for the mortgage four bonds of $1000 each and a note of $500. The bonds and note have been and are still retained by the defendant but they and others of a similar character were and are worthless. After the service of process, Sprague notified Hoey that the service of the foreclosure papers was a mistake and that the notice of *lis pendens* would be held off the record. The plaintiff relied upon this statement, gave the papers no further consideration, and did not authorize any attorney to appear for her in the foreclosure action.

The defendant, on finding the securities worthless, obtained a judgment of foreclosure on April 23d, 1932, and the law day was fixed as September 28th, 1932. On April 23d, May 6th and August 1st, 1932, the defendant notified the plaintiff that a law day had been fixed. On August 8th Hoey wrote to the defendant inquiring what was meant by the letter of August 1st and reminding him of his promise to discontinue the action, and was informed by letter that the foreclosure action had been started, stopped and started again and the law day set. No motion was ever addressed to the court by the plaintiff for extension of the law day. On September 12th, 1932, the plaintiff paid the defendant $1000 on account of her indebtedness and promised to guarantee the expenses incurred by the defendant in the foreclosure action and the defendant agreed to accept the amount due it, less a credit of the $1000, at any time before the third Monday of January, 1933. The plaintiff and her husband were thereafter prevented from raising further funds by reason of illness in the fall of 1932 and negotiations were further delayed by illness of the plaintiff's attorney. The defendant gave the plaintiff the agreed extension of time, but since September 12th, 1932, she has made no tender of her indebtedness or any part

thereof to the defendant and failed wholly to perform her agreement. Interest on mortgages, taxes and insurance premium are accumulating which have been carried by the defendant without any return to it since September 30th, 1932. The defendant filed its certificate of foreclosure on February 1st, 1933, and thereafter claimed title to the premises and threatened to eject the plaintiff therefrom.

The finding that the bonds and note turned over to the defendant were worthless is not effectively attacked but the evidence does not sustain the further statement that they were found to be so before the judgment of foreclosure was obtained. It does not appear that the plaintiff, in connection with the $1000 payment of September 12th, 1932, promised to guarantee the expenses of the foreclosure action, the evidence indicating that her refusal to make such guaranty in writing caused the defendant to decline to join in a written stipulation for extension of the law day to the third Monday of January, 1933, although it in fact delayed filing its certificate of foreclosure until after that date. The finding that plaintiff failed to perform her agreement to pay the balance due the defendant before the extended law day is questioned but must stand. The finding that the defendant on April 23d, May 6th and August 1st, 1932, notified the plaintiff that a law day had been fixed cannot be displaced, as the appellant requests, by a finding that neither the plaintiff nor her husband had knowledge of the judgment of foreclosure and the fixing of the law day, until August 1st. The finding of notice on the two earlier dates is supported by evidence, including copies of letters written by Sprague to Hoey which the trial court was warranted in finding were received. None of the other requested additions to

the finding which could be made would materially affect the result.

The complaint is equivocal as to the nature and purpose of the action. The first prayer for relief— that the foreclosure judgment "be set aside and that the plaintiff be given a hearing as to the amount of her indebtedness due and that a new law day be fixed"— was appropriate to an attempt to open and modify the judgment under § 5084 of the General Statutes. This remedy was precluded by the terms of the statute, in that when this action was brought the title had become absolute in the incumbrancer. The trial court's conclusion to that effect was correct and unavoidable. The plaintiff claims, however, that her complaint was more than a demand for the opening of the judgment, and constitutes, in effect, a resort to equity by petition for a new trial. As to this theory of the case, the trial court concluded that the plaintiff has neither used due diligence nor done equity and that the facts do not justify the granting of the remedy sought.

Courts of equity may grant relief from the operation of a judgment when to enforce it is against conscience, and where the appellant had no opportunity to make defense, or was prevented from so doing by accident, or the fraud or improper management of the opposite party, and without fault on his own part. *Folwell* v. *Howell,* 117 Conn. 565, 169 Atl. 199; *Dante* v. *Dante,* 93 Conn. 160, 105 Atl. 353; *Jarvis* v. *Martin,* 77 Conn. 19, 58 Atl. 5; *Smith* v. *Hall,* 71 Conn. 427, 42 Atl. 86; *Carrington* v. *Holabird,* 17 Conn. 530, 537, 19 Conn. 83, 87; General Statutes, § 5701. "Fraud, accident, mistake, and surprise are recognized grounds for equitable interference, when one, without his own negligence, has lost an opportunity to present a meritorious defense to an action, and the enforcement of

the judgment so obtained against him would be against equity and good conscience, and there is no adequate remedy at law." *Lithuanian Brotherhelp Society* v. *Tunila,* 80 Conn. 642, 645, 70 Atl. 25. "Equity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his counsel, unless the mistake is 'unmixed with negligence,' or . . . 'unconnected with any negligence or inattention on the part of the judgment debtor.' " *Jarvis* v. *Martin, supra,* p. 21.

The facts of record, with such corrections of the finding as we are able to make, do not so bring the present case within any of the recognized grounds for such equitable relief as to enable us to hold the trial court in error in withholding it. If there was mistake or misunderstanding following service of process in the foreclosure suit as to a delay in the filing of *lis pendens* and entry of judgment, it appears that on the day after judgment was obtained, again about two weeks later, and yet again after three months of the time allowed for redemption had elapsed but when nearly two months more remained, the plaintiff was notified of the judgment and of the date fixed as the law day. Opportunity was open to her, under § 5084 of the General Statutes, to have the judgment opened and modified for cause shown up to the expiration of the time fixed for redemption, but she failed to avail herself of this remedy. The record affords no suggestion of a meritorious defense to foreclosure, the possible contention apparently relating only to the amount of the debt, claim now being made that certain amounts applied on account of automobile insurance and interest on first mortgage should have been credited on the defendant's mortgage. The five-months period for redemption originally granted was,

in effect, extended by forbearance of the defendant to nine months, constituting as liberal a time as probably would have been granted had the present plaintiff appeared when it was originally fixed. If more favorable terms or a reduction in the judgment debt could have been obtained, loss of the remedy by the statute (§ 5084) is attributable only to the fault of the plaintiff in neglecting to resort to it. The indulgence granted by the defendant to afford the plaintiff opportunity to obtain funds with which to satisfy the mortgage debt seems at least fair and we can find nothing in the facts of the case which suggest fraud, accident or surprise, or which renders the foreclosure judgment unconscionable. Its consequences to the plaintiff, involving loss of her home and a substantial equity in it, are manifestly grievous and regrettable, but they differ, if at all, only in degree from those of many recent cases in which mortgagors, because of unanticipated conditions which prevent maintenance of payments from current income and earnings, and render difficult or impossible the obtaining of loans from other sources, find themselves unable to meet obligations incurred at a more prosperous and optimistic time.

There is no error.

In this opinion the other judges concurred.