Morris Tyler and others vs. William Hamersley, State's Attorney, and another.

Injunctions to restrain proceedings at law do not operate as prohibitions to the courts in the exercise of their jurisdiction, but only prevent the parties enjoined from availing themselves of some undue advantage which they may have obtained by fraud or accident.

Where therefore a petition for an injunction against the execution of an order of the court for the commitment of the petitioners for a contempt in disobeying a peremptory writ of mandamus, prayed merely that the State's Attorney be enjoined from praying out and the clerk of the court from issuing any process for their commitment, it was held that the petition, even if otherwise good, could not be entertained.

But a court of equity has no jurisdiction to grant an injunction to stay the execution of such an order.

If such an injunction should be granted it would be the duty of the court which ordered the commitment to disregard it, and to protect its officers in proceeding without regard to it.

Petition for an injunction to restrain the respondents, as State's Attorney and Clerk of the Superior Court, the one from praying out and the other from issuing any process for the execution of an order of the court for the commitment of the petitioners for a contempt in disobeying a peremptory writ of mandamus issued by the court; brought to the Superior Court in Hartford County, and reserved, upon a demurrer to the petition, for the advice of this court. The facts, which are sufficiently stated in the opinion, are the same with those of the next preceding cases of *New Haven & Northampton Company* v. *The State,* and *Tyler* v. *Hamersley.*

*W. Hamersley,* State's Attorney, and *J. R. Buck,* in support of the demurrer.

*G. H. Watrous* and *C. E. Perkins,* contra.

HOVEY, J.    Courts of equity are clothed with jurisdiction to restrain, by injunction, proceedings at law in all cases where, by fraud, accident, mistake or otherwise, a party has obtained an advantage in a court of law, which must necessarily make that court an instrument of injustice.    In cases of that description the restraint may be imposed to stay trial, and after trial and verdict to stay judgment, after judgment to stay execution, and after execution to stay money in the hands of the officer.    But after a judgment an injunction will not be granted to stay its execution, unless there has been fraud or collusion in obtaining it or the verdict upon which it was founded, or where the party has been unable to defend himself effectually at law, without any fault or negligence of his own, or where the plaintiff has possessed himself of something by means of which he has obtained an unconscientious advantage.    When an injunction is granted to stay proceedings in the courts of law, it is in no just sense a prohibition to those courts in the exercise of their jurisdiction. It is not addressed to them and does not even affect to interfere with them.    The process is directed only to the parties. It neither assumes any superiority over the court in which the proceedings are had, nor denies its jurisdiction.    It is granted on the sole ground that from certain equitable circumstances of which the court granting the process has cognizance, it is against conscience that the party inhibited should proceed in the cause.    The object, therefore, really is to prevent an unfair use being made of a court of law, in order to deprive another party of his just rights or subject him to some unjust vexation or injury which is wholly irremediable by a court of law.    Mitf. Eq. Plead., by Jeremy, 127, 128, 131; Eden on Injunct., ch. 2, p. 4; 2 Danl. Ch. Prac., 1623; *Earl of Oxford's case,* 1 Ch. Rep., 1; 3 Lead. Cases in Equity, by Hare & Wallace, 3d Am. ed., 155.

The case stated in the bill before us does not come within either of these principles.    The bill states that the Superior Court sitting at Hartford, issued upon motion of the State's

Attorney for Hartford County, a peremptory writ of manda-
mus against the New Haven and Northampton Company, a
railroad corporation created by the laws of this state, com-
manding them, upon service thereof, to stop at the Plantsville
depot in the town of Southington, their regular passenger and
freight trains, for the purpose of receiving and discharging
passengers and freight; that before the writ was served a writ
of error was brought to this court to reverse the judgment by
which the writ of mandamus was awarded; that regarding
the writ of error as a supersedeas of the writ of mandamus,
the plaintiffs, who were the directors of the New Haven and
Northampton Company, did not stop their trains at Plantsville
as the writ of mandamus commanded; that afterwards the
Superior Court which awarded and issued the writ of manda-
mus, on the petition of the State's Attorney for Hartford
County, adjudged the plaintiffs to be guilty of contempt in
refusing to obey that writ, and ordered them to be committed
therefor to the county jail in Hartford and to pay the costs of
the proceedings; and that process of attachment should be
issued against them by the clerk of the court unless they
should, within twenty days after notice of the order was
served on them, obey the writ of mandamus. The bill fur-
ther states that afterwards the plaintiffs brought a writ of
error to this court from the judgment by which they were
convicted of contempt, which is now pending, and that that
writ of error was and is a supersedeas of the order for their
commitment and of all process to be issued thereon; and the
bill concludes with a prayer for an injunction to restrain the
State's Attorney from taking out or causing to be issued any
process for the attachment or commitment of the plaintiffs
under said judgment, and also to restrain the clerk of the
court from issuing or allowing his assistant to issue any such
process, until otherwise ordered in due course of law. There
is no allegation in the bill that there was any fraud or collu-
sion in obtaining the judgment by which the peremptory writ
of mandamus was awarded, or the order directing an attach-
ment to issue for the commitment to prison of the plaintiffs
for their contempt in disobeying that writ, nor is there any

allegation that an unconscientious advantage was obtained by the state or its attorney in either of those proceedings. The sole ground upon which the injunction is prayed for is that the judgment in the proceedings by mandamus and the order in the contempt proceedings were superseded by writs of error.

In the case of *Morris Tyler & others* v. *William Hamersley, State's Attorney*, in error, which was argued at the present term of this court, we held, after much deliberation, that the writ of error brought upon the judgment awarding the peremptory writ of mandamus against the New Haven and Northampton Company, was not a supersedeas of the latter writ; and we also held in the same case that the writ of error brought upon the judgment by which the plaintiffs were adjudged guilty of contempt in disobeying the writ of mandamus and ordering them to be committed to jail therefor, did not operate as a supersedeas. These determinations took away from the plaintiffs the only grounds upon which they rest their right to the relief sought by the present bill, and entitle the defendants to a decree of dismissal with costs. But aside from those determinations, the facts charged in the bill show no title whatever in the plaintiffs to equitable relief, and are not even within the jurisdiction of a court of equity. It is an established rule that courts of equity will grant no injunction, or order in the nature of an injunction, to stay proceedings in any criminal matter. If they should do so, said Lord Holt, C. J., the court of Queen's Bench would break it, and protect any that would proceed in contempt of it. *Holderstaffe* v. *Saunders*, 6 Mod., 16. And Lord Hardwicke allowed a demurrer to a bill for an injunction to stay proceedings on a mandamus issued to the lord of a manor to hold a court. "The court," he said, "has no jurisdiction to grant an injunction to stay proceedings on a mandamus, or on an indictment, or on an information or a writ of prohibition." *Lord Montague* v. *Dudman*, 2 Ves. Sr., 396; Eden on Injunct., 41, 42; 3 Wooddes., Lect. 56, p. 413; Jeremy on Eq. Jurisd., book 3, ch. 2, § 1, p. 309; 1 Sto. Eq. Jur., § 893. It follows, therefore, that a court of equity has no jurisdiction to stay

the execution of an attachment for the commitment of a party adjudged guilty of a contempt in disobeying a peremptory writ of mandamus; for the attachment then becomes an essential part of the mandamus proceedings, and affords the only means at the command of the court for enforcing obedience to its authority.   High on Extr. Rem., § 567.   It has already been shown that injunctions to stay proceedings in courts of law are not addressed to those courts and do not even affect to interfere with them.   But the bill before us, in disregard of this principle, prays that the process may be directed not only to the party who instituted the contempt proceedings, but to the clerk of the court by which the contempt was adjudicated.   It is, therefore, in effect, a bill for an injunction to restrain the Superior Court, as a court of law, from enforcing obedience to a writ granted by the advice of this court, and from punishing the plaintiffs for their contempt in disobeying the mandate of that writ.   Should such an injunction be granted, it would be the duty of the court which ordered the punishment to be inflicted to disregard it and to protect its clerk and the State's Attorney in proceeding in contempt of it.   That would lead to a conflict of jurisdiction which would produce great confusion and disorder, and tend in a serious degree to subvert the administration of justice.

For these reasons the Superior Court is advised to dismiss the plaintiffs' bill.

In this opinion the other judges concurred; except PARK, C. J., who dissented for the reasons given in his dissenting opinion in the case of *Tyler* v. *Hamersley*, next preceding.